# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAE HENDERSON, JR.,<br><br>    Plaintiff,<br><br>v.<br><br>JEFFREY Y. HAMILTON, et al.,<br><br>    Defendants. | Case No. 1:21-cv-00697-NONE-SKO<br><br>**ORDER DIRECTING THE CLERK OF THE COURT TO FILE PLAINTIFF'S JULY 12, 2021 LODGED AMENDED COMPLAINT AS THE SECOND AMENDED COMPLAINT**<br><br>**FINDINGS AND RECOMMENDATION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>(Doc. 8) |

## I.   INTRODUCTION

On April 28, 2021, Plaintiff Dae Henderson, Jr., proceeding *pro se*, filed a complaint. (Doc. 1 ("Compl.").) On June 30, 2021, before the Court screened the initial complaint, Plaintiff filed a First Amended Complaint as a matter of course, *see* Fed. R. Civ. P. Rule 15(a)(1). (Doc. 6.) On July 12, 2021, Plaintiff lodged another amended complaint[1] (Doc. 8) and filed an amended application to proceed *in forma pauperis* (Doc. 7), which was granted on July 19, 2021 (Doc. 9).[2]

The Court construes the lodged July 12, 2021 amended complaint as a motion to amend the complaint. *See, e.g.*, *Smith v. Campbell*, No. 1:19–cv–00271–BAM (PC), 2020 WL 4570336, at *1

---

[1] Despite having filed a First Amended Complaint on June 30, 2021 (Doc. 6), Plaintiff identifies the amended pleading lodged on July 12, 2021, as a "First Amended Complaint" (*see* Doc. 8).

[2] Plaintiff's initial application to proceed *in forma pauperis* (Doc. 2) was denied without prejudice because the application did not comply with 28 U.S.C. § 1915. (*See* Doc. 3.)

1  (E.D. Cal. Aug. 7, 2020). Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may
2  amend a pleading once as a matter of course at any time before a responsive pleading is served. Fed.
3  R. Civ. P. 15(a)(1). Otherwise, a party may amend only by leave of the court or by written consent
4  of the adverse party, and leave shall be freely given when justice so requires. Fed. R. Civ. P.
5  15(a)(2). However, courts "need not grant leave to amend where the amendment: (1) prejudices the
6  opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile."
7  *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

8        Here, Plaintiff has already amended his complaint once as a matter of course (*see* Doc. 6)
9  and thus requires court approval for further leave to amend. Considering the relevant factors, the
10 Court finds that leave to amend should be granted. Plaintiff's First Amended Complaint has not yet
11 been screened and no defendants have appeared in this action. Accordingly, Plaintiff's motion to
12 file an amended complaint is granted, and the Court accepts the lodged July 12, 2021 amended
13 complaint ("Second Amended Complaint") as the operative complaint.

14       Plaintiff's Second Amended Complaint (Doc. 8 ("SAC")), which supersedes the First
15 Amended Complaint filed on June 30, 2021, *see Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th
16 Cir. 2012) (en banc), is now before the Court for screening. As discussed below, the undersigned
17 finds that Plaintiff has not stated a cognizable claim and will recommend that this action be
18 dismissed, without leave to amend, for failure to state a claim upon which relief may be granted.

19       **A.**    **Screening Requirement and Standard**

20       In cases where the plaintiff is proceeding *in forma pauperis*, the Court is required to screen
21 each case and shall dismiss the case at any time if the Court determines that the allegation of poverty
22 is untrue, or that the action or appeal is frivolous or malicious, fails to state a claim upon which
23 relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.
24 28 U.S.C. § 1915(e)(2). If the Court determines that a complaint fails to state a claim, leave to
25 amend may be granted to the extent that the deficiencies of the complaint can be cured by
26 amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

27       The Court's screening of a complaint under 28 U.S.C. § 1915(e)(2) is governed by the
28 following standards. A complaint may be dismissed as a matter of law for failure to state a claim

for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Plaintiff must allege a minimum factual and legal basis for each claim that is sufficient to give each defendant fair notice of what plaintiff's claims are and the grounds upon which they rest. *See, e.g.*, *Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995); *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

### B.     Summary of the Complaint

Plaintiff's twenty-two-page Second Amended Complaint is long, verbose, and confusing, which makes it difficult for the Court to determine what, if any, cognizable claims are contained within the complaint. Plaintiff names as defendants in this action the United States[3] and four individuals: Judge Jeffrey Y. Hamilton, Jr., of the Fresno County Superior Court, Fresno County Deputy District Attorney ("DDA") Douglas O. Treisman (erroneously named as "Douglas O. Triesman"), Fresno County District Attorney ("DA") Lisa Smittcamp, and Presiding Judge Arlan L. Harrell of the Fresno County Superior Court (collectively, "Defendants"). (*Id.* at 1.)

Based on the caption page of the Second Amended Complaint, Plaintiff appears to be asserting causes of action "for damages under 42 U.S.C. § 1985(3) for conspiracy against rights" and "for damages under 42 U.S.C. § 1986 for neglect to prevent conspiracy against rights," in addition to a "demand for the recovery of liquidated damages in quasi-contract." (SAC at 1.) Four "counts" are alleged in the Second Amended Complaint. (SAC at ¶¶ 19–26.) Count I alleges that Judge Hamilton and DDA Treisman "conspire[d] together . . . to, knowingly commit [sic] constitutional impermissible mis-application of statutes, laws, codes and regulations under Superior Court of California County of Fresno Docket Number(s): F05901739-3 and F06906257, with the design to incapacitate . . . Plaintiff of unalienable right's [sic], including but not limited to the right of liberty, to the enjoyment of life and to safety in person . . . ." (*Id.* at ¶ 19.) Count II similarly alleges a conspiracy between Judge Hamilton and DDA Treisman to "knowingly bring fraudulent

---

[3] The undersigned notes that it does not appear that Plaintiff is asserting any claims against the United States, as the Second Amended Complaint indicates that "[t]he United States is joined herein as a Defendant to attach outstanding surety in the hands of the Alien Property Custodian that is owed to the Plaintiff under Private Indemnity Agreement under Account xxx-xx-[xxxx]." (SAC at ¶ 14.)

charges upon, and unlawfully convict the Plaintiff under Case Docket Number(s): F05901739-3 and F06906257, to reduce the Plaintiff to the state of peonage and/or involuntary servitude . . . ." (*Id.* at ¶ 21.)

Counts III and IV allege that Presiding Judge Harrell and DA Smittcamp, respectively, "subject[ed] . . . Plaintiff to peonage and/or involuntary servitude, in, having knowledge that the other Defendant(s) were engaged in a concerted effort to subject . . . Plaintiff to the same, and having the power to prevent or enjoin the said conspiracy by reasonable dilligence [sic], failed or refused to do so." (SAC at ¶¶ 23, 25.)

Plaintiff further alleges that the actions by Defendants as set forth in Counts I through IV constitute a "breach of contract," and Defendants are thus subject to a "$2,000,000.00 (two million) lawful U.S. silver dollar penalty, plus damages, for, conspiracy against rights; abuse of authority; and false imprisonment" for each count. (SAC at ¶¶ 20, 22, 24, 26.)

### C. 42 U.S.C. §§ 1985 & 1986

42 U.S.C. § 1985(3) ("section 1985") protects against conspiracies between private individuals to deprive another person of their civil rights. 42 U.S.C. § 1985(3); *Griffin v. Breckenridge*, 403 U.S. 88, 96 (1971). "The elements of a § 1985(3) claim are: (1) the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; (2) an act in furtherance of the conspiracy and (3) a resulting injury." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1141 (9th Cir. 2000). "A claim under this section must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988).

"The original purpose of § 1985(3), which was passed as the Ku Klux Klan Act of 1871, was to enforce the rights of African Americans and their supporters." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005). To state a claim under section 1985(3), a plaintiff must allege sufficient facts to show "deprivation of a right motived by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'" *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002) (quoting *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992)). The Ninth Circuit requires "either that the courts have designated the class

in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection." *Sever*, 978 F.2d at 1536 (citation and internal quotation marks omitted). "The conspiracy . . . must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Orin v. Barclay*, 272 F.3d 1207, 1217 (9th Cir. 2001) (quoting *Griffin*, 403 U.S. at 102) (emphasis omitted).

42 U.S.C. § 1986 ("section 1986") provides in relevant part:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented[.]

42 U.S.C. § 1986. "Section 1986 authorizes a remedy against state actors who have negligently failed to prevent a conspiracy that would be actionable under § 1985." *Cerrato v. San Francisco Comm. College Dist.*, 26 F.3d 968, 971 n.7 (9th Cir. 1994). "A claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985." *Karim–Panahi*, 839 F.2d at 626 (citing *Trerice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir. 1985)).

## II.  DISCUSSION

### A.  Plaintiff's Alleged Conspiracy Claims

Liberally construed, the Second Amended Complaint alleges causes of action under section 1985(3) against Judge Hamilton and DDA Treisman and causes of action under section 1986 against DA Smittcamp and Presiding Judge Harrell. (SAC at ¶¶ 19, 21, 23, 25.) Absolute immunity, however, precludes Plaintiff's claims against Defendants, as Judges Hamilton and Harrell are entitled to judicial immunity, and DA Smittcamp and DDA Treisman are entitled to prosecutorial immunity. Furthermore, Plaintiff fails to allege sufficient facts to state cognizable claims under sections 1985(3) and 1986.

### 1.  Judicial Immunity

"Absolute judicial immunity insulates [a] judge from actions for damages due to judicial acts taken within the jurisdiction of the judge's court." *Williams v. Cty. of Fresno*, No. 1:21–CV–00648–AWI–SAB, 2021 WL 3052526, at *7 (E.D. Cal. July 20, 2021) (citing *Ashelman v. Pope*,

1  793 F.2d 1072, 1075 (9th Cir. 1986)). "Judicial immunity applies 'however erroneous the act may
2  have been, and however injurious in its consequences it may have proved to the plaintiff.'"
3  *Ashelman*, 793 F.2d at 1075 (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985)).
4  However, no immunity exists where a judge acts in the clear absence of jurisdiction or for acts that
5  are not judicial in nature. *Id.* Judicial conduct falls within "clear absence of all jurisdiction," where
6  the judge "acted with clear lack of all subject matter jurisdiction." *Stone v. Baum*, 409 F. Supp. 2d
7  1164, 1174 (D. Ariz. 2005) (citing *Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1389–
8  90 (9th Cir. 1987)).To determine if an act is judicial in nature, the court considers whether (1) the
9  precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the
10 controversy centered around a case then pending before the judge; and (4) the events at issue arose
11 directly and immediately out of a confrontation with the judge in his or her official capacity. *Duvall*
12 *v. Cty. of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001) (as amended).

13      Here, Plaintiff alleges conspiracy claims under section 1985(3) against Judge Hamilton for
14 unspecified actions taken in Fresno County Superior Court case numbers F05901739-3 and
15 F06906257 (*see* SAC at ¶¶ 19, 21), in which Plaintiff pleaded no contest and guilty, respectively, to
16 various criminal counts (*see Henderson v. Anglea*, No. 1:18–cv–00143–AWI–SKO, Doc. 28-5 at
17 63–66)[4]. Judge Hamilton was the presiding judicial officer in those actions. (*See id.*, Doc. 28-1.)
18 As Plaintiff's vague allegations against Judge Hamilton appear to stem from conduct that Judge
19 Hamilton undertook as a judicial officer while presiding over Plaintiff's criminal proceedings, the
20 undersigned finds that the claims arise out of the exercise of Judge Hamilton's judicial functions.
21 Indeed, the Second Amended Complaint does not set forth any factual allegations showing that
22 Judge Hamilton acted in the "clear absence of all jurisdiction." *See O'Neil v. City of Lake Oswego*,
23 642 F.2d 367, 369 (9th Cir. 1981). Accordingly, Judge Hamilton is entitled to judicial immunity,
24 and Plaintiff cannot bring claims against Judge Hamilton based on actions taken during the state
25 court criminal proceedings.

---

[4] The Court takes judicial notice of the relevant federal and state records available electronically. *See United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may take judicial notice of undisputed matters of public record, which may include court records available through [the Public Access to Court Electronic Records]."); *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of opinion and briefs filed in another proceeding); *see also* Fed. R. Evid. 201(b).

1   Judicial immunity similarly precludes Plaintiff's section 1986 claim against Judge Harrell.
2 Plaintiff alleges that Judge Harrell is the Presiding Judge of the Fresno County Superior Court, and
3 Judge Harrell "subject[ed] . . . Plaintiff to peonage and/or involuntary servitude, in, having
4 knowledge that the other Defendant(s) were engaged in a concerted effort to subject . . . Plaintiff to
5 the same, and having the power to prevent or enjoin the said conspiracy by reasonable dilligence
6 [sic], failed or refused to do so." (SAC at ¶¶ 12, 23.) These conclusory allegations against Judge
7 Harrell, without any factual support, are insufficient to overcome judicial immunity.

8   Based on the foregoing, the undersigned concludes that judicial immunity precludes
9 Plaintiff's claims against Judges Hamilton and Harrell.

10   **2.   Prosecutorial Immunity**

11   "[I]t is well established that a prosecutor has absolute immunity for the decision to prosecute
12 a particular case[.]" *Botello v. Gammick*, 413 F.3d 971, 976 (9th Cir. 2005). "[A]cts undertaken by
13 a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in
14 the course of his role as an advocate for the State, are entitled to the protection of absolute
15 immunity." *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997) (citation omitted). "The intent of the
16 prosecutor when performing prosecutorial acts plays no role in the immunity inquiry." *McCarthy*
17 *v. Mayo*, 827 F.2d 1310, 1315 (9th Cir. 1987) (as amended). Absolute immunity applies even if it
18 "'leave[s] the genuinely wronged defendant without civil redress against a prosecutor whose
19 malicious or dishonest action deprives him of liberty.'" *Genzler v. Longanbach*, 410 F.3d 630, 637
20 (9th Cir. 2005) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 432 (1976)).

21   Prosecutors, however, are entitled to "qualified immunity, rather than absolute immunity,
22 when they perform administrative functions, or 'investigative functions normally performed by a
23 detective or police officer.'" *Genzler*, 410 F.3d at 636 (quoting *Kalina*, 522 U.S. at 126). Courts
24 look to the "nature of the function performed" when determining if a prosecutor's actions are those
25 of an advocate, which are protected by absolute immunity, or of an administrator or investigator,
26 which are not. *Garmon v. County of Los Angeles*, 828 F.3d 837, 843 (9th Cir. 2016) (quoting
27 *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). For example, "decisions to hire, promote,
28 transfer and terminate" employees, "which do not affect the prosecutor's role in any particular

matter," are generally deemed administrative functions not protected by absolute immunity. *Lacey*, 693 F.3d at 931. Similarly, "[a]bsolute immunity does not apply when a prosecutor 'gives advice to police during a criminal investigation,' 'makes statements to the press,' or 'acts as a complaining witness in support of a[n arrest] warrant application.'" *Garmon*, 828 F.3d at 843 (quoting *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009)) (brackets in original).

Here, the Second Amended Complaint does not allege sufficient facts to explain what, precisely, DDA Treisman and DA Smittcamp did in connection with the alleged conspiracy to deprive Plaintiff of his civil rights, or why their actions do not warrant application of absolute prosecutorial immunity. With regard to DDA Treisman, Plaintiff's section 1985(3) claims appear to be based on DDA Treisman's involvement in Plaintiff's criminal proceedings in Fresno County Superior Court case numbers F05901739-3 and F06906257. (*See* SAC ¶¶ 10, 19, 21.) Plaintiff cursorily alleges that DDA Treisman conspired to "knowingly commit constitutional impermissible mis-application of statutes, laws, codes and regulations" and to "knowingly bring fraudulent charges upon, and unlawfully convict" Plaintiff in the state court cases. (*See* SAC at ¶¶ 19, 21.) Even if DDA Treisman allegedly "knowingly [brought] fraudulent charges upon" Plaintiff and knowingly misapplied the law (*see* SAC at ¶¶ 19, 21), he is nonetheless entitled to absolute prosecutorial immunity because his actions in prosecuting a criminal case against Plaintiff are "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. *See Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001) (prosecutorial immunity "covers . . . malicious prosecution"); *Coleman v. Ortiz*, No. 20–CV–03356–SI, 2020 WL 3185604, at *2 (N.D. Cal. June 15, 2020) (finding that prosecutorial immunity applied to allegations that district attorneys "filed malicious, frivolous, and/or false charges against [the] plaintiff because they have immunity for their alleged decisions relating to their charging decisions and their conduct in trying the cases").

As for DA Smittcamp, Plaintiff alleges that she "did subject . . . Plaintiff to peonage and/or involuntary servitude, in, having knowledge that the other Defendant(s) were engaged in a concerted effort to subject . . . Plaintiff to the same, and having the power to prevent or enjoin the said conspiracy by reasonable dilligence [sic], failed or refused to do so." (SAC at ¶ 25.) Plaintiff's allegations against DA Smittcamp are threadbare, but to the extent Plaintiff is alleging that DA

8

Smittcamp failed to prevent violations of his civil rights as DDA Treisman's supervisor, DA Smittcamp is also entitled to absolute prosecutorial immunity. "An attorney supervising a trial prosecutor who is absolutely immune is also absolutely immune." *Garmon*, 828 F.3d at 845 (citing *Van de Kamp*, 555 U.S. at 345–46). "Absolute immunity applies even if [the plaintiff] challenges general methods of training and supervision, rather than specific supervision and training related to his case." *Cotton v. Cty. of San Bernardino*, No. EDCV152314VAPAGR, 2016 WL 7187442, at *10 (C.D. Cal. Nov. 9, 2016), *report and recommendation adopted*, No. EDCV152314VAPAGR, 2016 WL 7176575 (C.D. Cal. Dec. 8, 2016).

Accordingly, absolute immunity bars Plaintiff's conspiracy claims against DA Smittcamp and DDA Treisman. *See Agnew v. Moody*, 330 F.2d 868, 869 (9th Cir. 1964) (prosecutorial immunity applies to section 1985 conspiracy claims); *Lewis v. Franklin*, No. C–03–0359–MMC, 2007 WL 30592, at *4 n.2 (N.D. Cal. Jan. 3, 2007) ("Absolute prosecutorial immunity also bars conspiracy claims . . . asserted under § 1985 and § 1986.").

### 3.  Insufficient Facts Alleged to State a Cognizable Claim

Even assuming Plaintiff's claims against Defendants are not precluded by immunity, Plaintiff has failed to allege sufficient facts to state cognizable claims under sections 1985(3) and 1986. Plaintiff's section 1985(3) claims against Judge Hamilton and DDA Treisman do not include any facts indicating that the alleged conspiracy between the two defendants was motivated by some "some racial or class-based invidious discrimination" (*see* SAC at ¶¶ 19, 21), which is a necessary element of section 1985 claim. *Bretz v. Kelman*, 773 F.2d 1026, 1028 (9th Cir. 1985). Plaintiff also fails to sufficiently allege the existence of a conspiratorial relationship between Judge Hamilton and DDA Treisman, as he makes only conclusory allegations that they "did conspire together" (*see* SAC at ¶¶ 19, 21). *See Karim–Panahi*, 839 F.2d at 626 ("A mere allegation of conspiracy without factual specificity is insufficient."). The Second Amended Complaint thus does not state any cognizable claims under section 1985(3). Because a claim under section 1986 is necessarily contingent upon a valid section 1985 claim, Plaintiff's section 1986 claims against Judge Harrell and DA Smittcamp are also not cognizable. *See id.*; *Trerice*, 769 F.2d at 1403.

### B. Plaintiff's Alleged Breach of Contract Claims

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, courts "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).

Plaintiff appears to allege breach of contract claims against Defendants, in addition to his conspiracy claim under sections 1985 and 1986. (*See* SAC at ¶¶ 20, 22, 24, 26.) To the extent Plaintiff attempts to raise claims for breach of contract, which are state law claims, *see Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*, 376 F.3d 831 (9th Cir. 2004) (holding that cause of action for "damages stemming from alleged breach of contract[] is clearly a creature of state law"), the undersigned does not address those claims. Because the undersigned finds that Plaintiff fails to state a cognizable claim under federal law, it declines to exercise supplemental jurisdiction over any potential state-law claims.

### C. Leave to Amend Would Be Futile

When dismissing a complaint, the Ninth Circuit has stated that "leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted); *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996). If, however, it is clear after careful consideration that a complaint cannot be cured by amendment, the court may dismiss without leave to amend. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *see also Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013); *accord Lopez*, 203 F.3d at 1129 ("Courts are not required to grant leave to amend if a complaint lacks merit entirely.").

Here, it is clear from the face of the complaint that Plaintiff's claims against Defendants are precluded by immunity. No additional facts consistent with this pleading would cure such a deficiency. Thus, the undersigned recommends denying leave to amend because amendment would be futile.

### III. CONCLUSION, ORDER, AND RECOMMENDATION

Based on the foregoing, it is HEREBY ORDERED that the Clerk of the Court shall FILE Plaintiff's July 12, 2021 lodged Amended Complaint (Doc. 8) as the Second Amended Complaint.

Furthermore, it is HEREBY RECOMMENDED that this action be dismissed for failure to state a claim, without leave to amend.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l)(B).  **Within twenty-one (21) days after being served with these Findings and Recommendations**, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 24, 2021**            /s/ *Sheila K. Oberto*
                                                           UNITED STATES MAGISTRATE JUDGE